The President delivered the following charge to the jury :
 

 Shippen, President.
 

 This is an information exhibited against the ship Anna, as being a vessel from which forty-two hampers of porter were unladen, without a previous entry at the collector’s office. The evidence on the part of the informants proceeds from several witnesses, one of whom discovered the drays going from Clifford’s alley, and pursued them to Smith’s, where the porter was lodged. Two porters have proved the unlad-ing and the seizure ; and by the manifest, it appears, that only twenty hampers were entered, though forty-two were carried to Smith’s, twenty-four to the captain’s store, and above fifty remained on board the ship : so, the evidence is full and clear, that more goods have been unladed, than were entered with the collector. The claimants, on the other hand, have filed their claim, and say, that no act has been done, which, under the laws of Pennsylvania, incurs a forfeiture. This, therefore, is the province of the jury to try and determine.
 

 The words of the act of assembly upon which this prosecution is grounded, have been the subject of animadversion on both sides ; but as they are few, we will repeat them. “ Every vessel or boat, from which any goods, wares or merchandise shall be unladed, before due entry thereof at the office of the collector of the port of Philadelphia, &c., shall be forfeited.” Some doubts have been raised with respect to the thing meant to be entered ; but the rrubject-matter of the act plainly refers to “ goods, wares and merchandise and it would be highly absurd, if taken otherwise, as boats are never entered. This act does not say what shall be a due entry, but the next precedí ag one requires, that “ the master of any ship or vessel shall exhibit to the collector a true manifest of the goods, wares and merchandise imported in such ship or vessel, &c., and swear that there are no other on board, to the best of his knowledge and belief.” It has been suggested, that the master having delivered in a manifest, and sworn to it, this duty is done, and that in case of an omission, only the goods omitted are to be forfeited. But if the master is obliged by law to deliver in a manifest, he does not comply, unless he exhibits a true and accurate one ; and his committing perjury upon the occasion, so far from saving the vessel, must greatly increase the offence. *20fil ^bis has been repeatedly called a hard law ; but the truth *is, that J revenue laws are of a harsher nature than any others, and necessarily so ; for, the devices of ingenious men render it indispensable for the legislature to meet their illicit practices with severer penalties.
 

 Thus, if the sheriff has a writ against any man, he cannot break open his door to execute it — but if liquor is smuggled into a cellar, the law says it is better that an individual should suffer in his personal privileges, than that the public should be cheated of its duties ; and therefore, allows the officer to force locks, &e., in order to make a seizure : in the first case, between citizen and citizen, a man’s house is considered as his castle; in the second, between the public and the private character, it is no longer regarded in that sacred light. We do not mean, however, to reflect on laws of this description; we know they are necessary, as every society stands in need of
 
 *217
 
 assistance from its members. If the end can be accomplished, without infringing the private rights of the subject, it is so much the better; but, at all events, the exigencies of government must be satisfied. It has been said, that, if the law is enforced, as the informants contend for, the merchants will not be safe, no foreign vessels will be sent to our ports, and, eventually, the revenue must fail. But, nevertheless, it is requisite that such laws should be strictly worded, though, undoubtedly, there are cases where the construction of the words must be such, as to prevent more injury being done than was intended. The navigation act of England says, that goods imported as merchandise shall be forfeited, if they do not pay a certain duty; and the case in 2 Strange 943
 
 (Chapman v. Lamb),
 
 is a seizure of shirts, night-gowns and caps, under this law. It was there argued, that the word “ goods,” would certainly include those articles, but the judges were of opinion, that it could not be the meaning of the legislature, to make wearing-apparel subject to forfeiture. The case in Bunbury is the single one that reaches the point before us.
 
 [1]
 
 There, the question arises, whether goods put on board secretly, and unladen without the knowledge of the master, would occasion a confiscation; and the judges agreed, that if it was a small matter, and no part of the cargo, it would not. The claimants therefore, to have the benefit of this case, should show : 1st. That the subject of the present prosecution, is a small matter : 2d. That it was no part of the cargo: and 3d. That it whs smuggled, without the knowledge of the master.
 

 1st. Then a
 
 small matter
 
 is an indefinite phrase, not to be ascertained by mere words,-but by the evident meaning of the judges who used it; and from that criterion, it should seem to be a trifling thing, easily concealed, and which might fairly escape the notice of the master; but it cannot be extended to large and weighty goods, deposited in the hold of the vessel and which then constituted a part of her cargo,
 
 (a)
 
 2d. The counsel for the informants have suggested, that only such goods as belong to the owners, or yield them a profit upon freight, can be called a
 
 eargo;
 
 whereas, in truth, the cargo is the lading of the vessel, and, though by bribery or craft, some articles *might be introduced into the hold, without the knowledge ^ of the owners, or the master, yet everything which is put on board *- the vessel, is, in general, comprehended in that description. But 3d. The knowledge of the master is here proved by strong presumption. The quantity of porter that was put on board, the removal of it at sea, the evidence of the delivery of twenty-four hampers at his store, and by his order, are circumstances from which, we suppose, the claimants themselves did not think his ignorance of the transaction tenable.
 

 Then, there remains only the great point upon which the counsel for the claimants seem chiefly to rely, to wit, their innocénce and ignorance, with respect' to the fraud that has been committed. There is no evidence, indeed, that tends to show, that the owners of the ship meant to do anything unfairly ; but, on the contrary, that the mate brought the goods hither with the avowed intention to defraud them, as well as the state. The question then recurs, what difference does it make, whether they knew it or not ?
 
 *218
 
 Here is a positive law that directs a due entry of all goods, wares, and merchandise imported into this state, under certain penalties, and one of them is the forfeiture of the vessel or boat from which they are unladed. It does not speak of the knowledge of any person, but seems to be studiously worded to avoid that construction. It is not a novel laiv, though perhaps it is stricter now than formerly : for, in England, it has long existed, and before the revolution, it was known in Pennsylvania. The legislature has thought that nothing else would answer, and the judges and the jurors are equally bound to obedience. If, indeed, the law was doubtful or latitudinal, admitting one interpretation, which would be just, and another which would be unjust, it would become us to prefer the former. But if the policy of the legislature seems to bear hard on the subject, we are not to judge, and determine upon its propriety (that is a matter for the deliberation of those who made the law), and however unjust it seems, we must acquiesce, or there must be a dissolution of society. It must certainly affect every humane man to see the innocent suffer ; but in society this is not strange or uncommon ; and the distinction may properly be taken between criminal and civil cases. The law never punishes any man criminally but for his own act, yet it frequently punishes him in his pocket, for the act of another. Thus, if a wife commits an offence, the husband is not liable to the penalties ; but if she obtains the property of another, by any means, not felonious, he must make the payment and amends. There are a variety of other instances, in which men are responsible for one another, in consequence of their connection in society. The drayman, if he drives over and kills a child, must himself suffer the judgment of the law ; but if he staves a pipe of wine, his master must make the compensation. Upon the whole, it is neither a hard nor a novel case, since men must occasionally employ others to act for them, and ought to answer for those in whom they confide. If the legislature has thought proper to subject the owners to this forfeiture, we must submit. With the jury, therefore, the *2081 P0AV’er AS happily lodged, *which was formerly exercised by a single J judge, and it is their duty finally to acquit or condemn the ship, as in their consciences they think ought to be done.
 

 The jury, after a short adjournment, returned a verdict in favor of the informants.
 
 (a)
 

 By the general maritime law, vessels are made responsible for the unlawful acts of their masters and crews; and this extends even to forfeitures by positive law. United States
 
 v.
 
 The Malek Adhel, 2 How. 210; Smith
 
 v.
 
 Maryland, 18 Id. 76-6; The Siren, 7 Wall. 162; Dobbins’ Distillery
 
 v.
 
 United States, 96 U. S. 400.
 

 (a)
 

 See Vasse v. Ball, 2 Dall. 273, 276.
 

 [1]
 

 Greeby
 
 v.
 
 Palmer, Bunb. 232, n.
 

 (a)
 

 See Vasse v. Ball. 2 Dall 270; s. c. 2 Yeates 178; Perot
 
 v.
 
 United States Peters C. C. 206; Unitod States v. The Hunter, Id. 10; United States v. Cave, 3 Hall’s Law Journal 176; Case of Le Tigre, 3
 
 W.
 
 C. C. 567.